<div align="right">1819.</div>

<div align="right">DALE<br>v.<br>COOKE.</div>

----

DALE and others, Executors of FULTON, *against* COOKE.

Joint and separate debts cannot be set off against each other in equity, *January 11th.*　any more than at law.

To authorize a set off, the debts must be mutual, and due to and from the same persons, in the same capacity.

Therefore, a debt arising on a contract made with an *executor,* cannot be set off against a debt due from the testator.

THE bill stated that *the plaintiffs, together with Robert L. Livingston and Edward P. Livingston,* on the 29th of *April,* 1817, leased to the defendant, certain lands in the city of *Jersey,* for one year, paying to the lessors the yearly rent of 100 dollars, in half yearly payments, with liberty to the defendant to extend the term for four years after the expiration of the first year, which he elected to do, subject to the same rent. That the defendant entered, and is now in possession, and hath paid no rent; so that, on the 1st day of *November* last, there was due 1,500 dollars. That the defendant has sued the plaintiffs, as executors of *Fulton,* and in *December* last, recovered 1,166 dollars and 66 cents; and the plaintiffs could not, *at law,* set off the rent so due to them, *and the said Robert L. Livingston, and Edward P.*

*1819.*

DALE
v.
COOKE.

*Livingston.* That the defendant refused to allow the set-off, though the plaintiffs are in possession of the lease, and have authority to give receipts and discharges for the rent. That the defendant is in insolvent circumstances, and unless the set-off be allowed, the rent due will be lost, by reason of the insolvency of the defendant. Prayer for an injunction, &c.

*Henry,* for the plaintiffs, moved for an injunction, and cited *Montagu on Set-off,* 1 . 9 . 65.

THE CHANCELLOR. There is no sufficient ground for a set-off stated in this bill. The defendant has recovered a judgment at law against the plaintiffs, as executors of *Robert Fulton,* deceased, and now they ask for the interference of this court to enable them to set off against that judgment, rent due to them and the *Livingstons,* upon a lease of lands made by them and the *Livingstons,* to the defendant, since the death of *Fulton.* It does not appear from the bill, that the lands, so leased, belonged to their testator, or that they executed the lease in their representative character, as executors, or that they had any concern as executors, with the real estate of *Fulton,* or in what proportions the *Livingstons* and they were interested in that rent. There is no mutuality or privity appearing between the two debts, and it would be equally unprecedented and dangerous to interfere in the case. Before I could deal with that rent by way of set-off, the two *Livingstons* ought to be brought into court, and it would be necessary to take an account between them and the plaintiffs, or, in some other way, to ascertain what part of the rent belonged to the present plaintiffs; and I ought equally to know whether this rent was assets in their hands, as executors. I can scarcely conceive of a bill more defective in all the material allegations to support the claim now set up.

In *Duncan* v. *Lyon*, (3 *Johns. Ch. Rep.* 351.) I took occasion to look into the doctrine of set-off, and though the point there was not precisely upon a joint and separate demand, yet it was assumed as a general rule of law and equity, that a *joint* and a *separate* debt, could not be set off against each other. The debts, or the credits, for they were considered as subject of set-off, must be mutual, and due to and from the same persons in the same capacity. If there be any exception to this general rule, it must arise, as Lord *Eldon* said, (3 *Merivale*, 618.) *under particular. circumstances*, as where there is a clear series of transactions in which *joint credit* has been given. In respect to credits, it is well understood, (*James* v. *Kynnier*, 5 *Ves.* 108.) that to constitute an equitable set-off, there need not be strictly mutual debts; and it is sufficient that there are mutual credits. Such is also the language of our set-off act.

1819.

DALE
v.
COOKE.

It is an established rule in the courts of law, that if executors sue for a debt created to them since the testator's death, the defendant cannot set-off a debt due to him from the testator. This would be altering the course of distribution. (*Shipman* v. *Thompson, Willes' Rep.* 103. *Tegetmeyer* v. *Lumley, Willes' Rep.* 264. *note.*) I see no reason why the same rule should not prevail in equity. The general doctrine on the subject is the same in both courts, as was shown in *Duncan* v. *Lyon;* and if the defendant could not set off in such a case, neither could the executor, if he was the defendant, for the rule must be mutual. The cases in which there has been more relaxation of the rule of law, which forbids a set-off between joint and separate debts, are ~~separate~~ cases in bankruptcy; and it is said that the Chancellor's jurisdiction in bankruptcy relative to set-off, is derived from the statutes of 13 *Eliz.* and 5 *Geo.* II. and is wholly unconnected with the general set-off act of *Geo.* II. (2 *Maddock's Treatise on the Principles and Practice of Chancery,* 512—515.) Even in these bankrupt cases, the departure from the general rule seems to be

questioned, and, at last, prohibited, notwithstanding the statutes of bankrupt embrace mutual credits as well as mutual debts.

In the case, *ex parte Edwards*, (1 *Atk*. 100.) which came before Lord *Hardwicke*, by petition in bankruptcy, a creditor to *A*. and a debtor to *B*. (both of whom were declared bankrupts,) petitioned that the suit by the assignees of *A*. and *B*. might be stayed, and his debt from *A*. be set off. The Chancellor treated it as a doubtful case, and by way of experiment, directed an inquiry to see how much he owed the joint estate, and how much the separate estate owed him. It does not appear what became of the case afterwards, or that any decision was ever made. On the strength of this case, Lord *Rosslyn*, in *ex parte Quintin*, (3 *Ves.* 248.) allowed a party to set-off the share of a bankrupt partner in a joint debt, due from him to the partnership, against the debt due from the bankrupt individually, to him. But in *ex parte Twogood*, (11 *Ves.* 517.) Lord *Eldon* examined and disapproved of this decision. He said, that he did not understand the reason or principle of it, for the partnership debts were all actually paid. If there be debts, he observed, which could not be set off at law, must all the affairs of the bankruptcy be suspended, until all the accounts are cleared, in order to see what rights of set-off there may be in the result? The consequence would be, that where there are joint and separate debts, which cannot be set off at law, in every bankruptcy, the proceedings must be suspended until the accounts are taken, and it is seen what the joint estate, and what the separate estate will pay. The counsel, in that case, declared that there was no instance of a bill to relieve the hardship at law, in not setting off these demands. The Chancellor thought there was a good deal of natural equity in the proposition, upon which the petition stood, yet he denied the relief sought in the nature of a set-off against a separate creditor of the bankrupt, indebted to the partnership to a greater amount.

The case, *ex parte Hanson*, (12 *Ves.* 346.) was before Lord *Erskine*. *H.* & *W.* were indebted on a joint bond, (*H.* as principal and *W.* as surety,) to *C.* & *P.*, who were bankrupts, and who owed *H.* The assignees sued *H.* on his bond, and he applied by petition to be allowed to set off. It was admitted upon the argument, that there could be no set-off at law between joint and separate debts, and the petitioner relied on *ex parte Stephens*, (11 *Ves.* 24.) which the other side said was decided upon equitable grounds administered in bankruptcy, viz. the fraud. The Chancellor allowed the set-off on account of the joint bond being that of principal and surety ; and he said, that his jurisdiction in bankruptcy was equitable as well as legal. When this case came again before the Court on the Master's Report, (18 *Ves.* 232.) Lord *Eldon* observed, that the joint debt there was nothing more than a *security for a separate debt.*

Here, then, is the result even of these set-off cases in bankruptcy. They leave the general rule very much as it had existed before ; and in the recent case of *Addis* v. *Knight*, (2 *Meriv.* 121.) the Master of the Rolls said, that " It is quite clear, that as at law a joint cannot be set off against a separate debt, the same rule prevails in equity, and must continue to prevail, so long as the present system, in regard to joint and separate estates, subsists. The case, *ex parte Quintin*, may be considered as an exception ; but in *ex parte Twogood*, Lord *Eldon* expresses his disapprobation of that decision."

My conclusion is, that joint and separate debts cannot be set off in equity any more than at law ; and if the bill was free from the other fatal imperfections which I have mentioned, and the case was reduced to this single point, I should be obliged to deny the motion.

<div align="center">Motion denied.</div>

**1819.**

DALE
v.
COOKE.

*February 10.*

The motion was renewed upon an amended bill, stating that the plaintiffs, *as executors* of *Robert Fulton,* deceased, together with *R. L. Livingston* and *Edward P. Livingston,* made the lease to the defendant, and that the two *Livingstons* had, by deed, and for a valuable consideration, assigned to the plaintiffs, as such executors, their right and interest in the rent reserved by the lease.

*Henry,* for the motion.

THE CHANCELLOR observed, that one objection to the injunction had been removed; for it would seem here was no longer the case of an attempt to set off a joint against a separate debt. But another difficulty still remained. Here was an application to set off a debt arising on a contract with an executor, against a debt arising on a contract with the testator. They are not debts due to and from the same persons, in the same capacity, and there is no mutuality. It would be confounding the contracts of testators with the contracts of executors.

To remove this objection, it ought at least to have appeared, that the lands so leased belonged to the testator, at the time of his death, and that the executors had authority to lease the same, and that the rent was made assets for the payment of debts. The will ought to have been set forth, or so much of it as was requisite to satisfy the Court in those particulars; the ownership of the lands leased ought, also, to have been stated.

<div align="right">

Motion denied.