### LAWRENCE, Adm'r &c., vs. VILAS.

*Action by personal representative—Defendant's right to testify in his own behalf— Counter-claim and set-off.*

1. Upon a cause of action on which his decedent in his lifetime had a complete right of action, the executor or administrator must sue in his representative capacity.
2. But upon a cause of action accruing to the executor or administrator after the death of his decedent, he may sue either in his own name or in his representative character.

3. Where the survivor of two partners, as a part division of the assets of the firm, transferred his interest in an account of the firm to the executrix of the deceased partner, a suit upon the account was properly brought by her as such executrix.

4. In such an action the defendant may testify in his own behalf, though not as to anything that occurred between himself and the deceased, in the absence of the surviving partner, or of which such survivor had no personal knowledge ; his testimony on those points being excluded by the third clause of sec. 51, ch. 137, R. S., on the ground that each partner is an *agent* of the firm as to the business which he transacts for it.

5. The statutory rule that a party cannot be examined as a witness when the opposite party sues or defends as legal representative of a deceased person (sec. 51, ch. 137, R. S.), is properly applicable only where the cause of action or matter of defense is one which accrued to the deceased in his life time, and upon which, if still living, he might himself sue or defend; and not where the legal representative sues upon a chose in action purchased by him, and might, if he chose, bring the suit in his own name.

6. Matter pleaded as a counter-claim may be sustained as a *set-off*, if proven at the trial, and the demand of the answer for judgment as upon a counter-claim may be rejected, or an amendment ordered by the court.

Dixon, C. J., was of the opinion (1.) That in an action by the executor of a deceased partner upon a demand in favor of the firm, which has been transferred to the plaintiff in a division of the partnership assets, a demand *against the firm* cannot be pleaded either as a counter-claim or as a set-off. (2.) That in such an action a demand *against a surviving partner* cannot be pleaded as a *counter-claim* (although of such a nature that it would constitute a proper counter-claim in a suit by such survivor on the same cause of action); but it may be allowed as a *set-off*. (3.) That in such an action a several demand against the *deceased partner* could not, by the general doctrine of the English and American courts, be pleaded as a set-off, because it would change the order of distribution. But whether our statutes relative to the settlement of claims against the estates of deceased persons have changed this rule, and, if not, whether for the same reason such a demand should not be rejected as a *counter-claim, quære.*—On the points mentioned in this paragraph the court does not decide.

APPEAL from the Circuit Court for *Dane* County.

This action was brought by *Sarah K. Roys*, as executrix of the will of Samuel H. Roys, deceased, upon a claim alleged to have accrued in 1856 and 1857 against the defendant and in favor of the law firm of Roys & Pinney, for professional services ; Mr. Pinney, after the dissolution of said firm by the death of Mr. Roys, having assigned his interest in said claim to the plaintiff, " as a part division of the assets of said firm." The answer states that Roys, Pinney and the defendant were

in partnership in the practice of the law from May 1st, 1854, to June 27, 1856, when the defendant retired, and Roys and Pinney continued in business until the death of Roys, August 18th, 1857; that the suit in which Roys & Pinney rendered the services sued for, was commenced in July, 1855, and was pending in said court until November, 1856; that it was appealed to the supreme court, and was there argued at the June term, 1857. The answer then alleges an agreement between the parties when the firm of Vilas, Roys & Pinney was dissolved, that Roys & Pinney should perform the services in question without compensation, in consideration of the fact that all the unfinished business of the old firm was turned over to them without charge. It then sets up three counter-claims, as follows: 1. That at the dissolution of the firm of Vilas, Roys & Pinney, there were accounts, notes and demands due said firm from various persons, amounting to about $4000; that these remained with Roys & Pinney for collection, and one third of the amount was to be paid over to defendant as his share thereof; that there was collected thereon an amount to defendant unknown, but the defendant's share thereof was not less than $1000, of which only $200 was ever paid to defendant; and he demands that an account be taken of the amount so collected, and the amount still due him, and that he may have judgment for that amount against the plaintiff, as executrix &c. 2. That about the time of the dissolution of said firm of Vilas, Roys & Pinney, defendant received from said Roys and said Pinney, in part payment of certain moneys advanced by him to purchase lands for Vilas, Roys & Pinney, a note and mortgage against one John Wier, running to said Pinney, taking them at par; and, in consideration thereof, said Roys and said Pinney each agreed to pay him one third part of any costs and expenses which might be incurred and of any labor bestowed by defendant in collecting said note or foreclosing said mortgage; that defendant was afterwards obliged to and did foreclose said mortgage, and that the expenses incurred and the

value of his labor in so doing amounted to eighty dollars before the assignment of the claim in suit to the plaintiff; wherefore he demands judgment for two thirds of that amount—$53.33—against the plaintiff as executrix &c. 3. The third counter-claim was also a demand alleged to exist in favor of defendant against the firm of Roys & Pinney, growing out of alleged negligence or malfeasance of that firm in collecting a claim in favor of the firm of Vilas, Roys & Pinney, one third of which, if collected, would have been payable to defendant.

On the trial, the court refused to receive any evidence in support of the counter-claims. It also refused to permit the defendant to be examined as a witness in his own behalf, due notice having been given of his proposed examination, and it being admitted that Mr. Pinney, the assignor to plaintiff of the account in suit, was still living. Mr. Pinney, for the plaintiff, testified to a conversation between himself and the defendant, after the death of Mr. Roys; the tendency of the testimony was to disprove the defense set up in the answer. The defendant was not allowed to testify in his own behalf in regard to said conversation.

Verdict and judgment for the plaintiff; and defendant appealed.

*William A. Lawrence*, having been appointed administrator *de bonis non* of the estate of Mr. Roys, was substituted for *Mrs. Roys* as plaintiff.

*E. & C. T. Wakeley* and *Wm. F. Vilas*, for appellant, argued that *Mrs. Roys* sued as assignee and not purely and necessarily as executrix; and as the assignor was still living, the defendant was entitled to testify to the same extent as if the suit had been brought by such assignor. Sec. 51, ch. 137, R. S. 2. In a suit by Pinney, as surviving partner, the three causes of action in favor of defendant would clearly have been proper counter-claims or set-offs. If so, then the right to plead them as set-offs by way of counter-claim, at least to the extent of

the demand sued on by *Mrs. Roys* as assignee, is expressly given by subd. 5, sec. 1, ch. 126, R. S.

*H. W. & D. K. Tenney*, for respondent, as to the exclusion of defendant's testimony, relied on sec. 51, ch. 137, R. S. 2. The counter-claims set up were claims of *Vilas* as one of the firm of Vilas, Roys & Pinney, against the other partners, on account of unsettled partnership matters. There never was any final settlement between the partners, and until such settlement no debt exists from one to the other. The rights and duties of the old firm are not at all affected by the fact that Roys and Pinney afterwards formed a new partnership. It is only on a final accounting between the partners that the amount due each can be determined; and no such accounting can be had by law except in a suit for that purpose, to which all the partners are parties. The counter-claims were therefore properly ruled out. R. S., ch. 125, sec. 11: Collyer on Part., B. 2, ch. 3, sec. 2, and cases there cited; Story on Part., § 221; Barbour on Set-off, 140; 19 Barb., 196; 4 Duer, 285, affirmed in 3 Kern., 248; 9 How. Pr. R., 228; 17 Johns., 80.

DIXON, C. J. This cause was before us at the January term, 1864, upon the appeal of *Mrs. Roys*, plaintiff, executrix, &c., from a judgment of compulsory nonsuit. 18 Wis., 169. We then held that the suit was by *Mrs. Roys* in her capacity of executrix, and that it was properly so brought. We are still of the same opinion. Upon a cause of action which arose in the lifetime of the testator or intestate and upon which he had a complete right of action, the executor or administrator must sue in his representative capacity; but upon a cause of action accruing to the executor or administrator after the death of the testator or intestate, the executor or administrator may sue either in his own name, or as executor or administrator. It was so decided by this court in *Knox v. Bigelow*, 15 Wis., 423; and authorities to the same effect are very numerous and very uniform. *Mowry v. Adams*, 14 Mass., 327, and cases cited; 16

Mass., 71; 1 Pet., 692; 1 Blackf., 176; 3 id., 253; 9 Wend., 486; 2 Hill, 210; 4 id., 57; 4 Cow., 87; 5 id., 268; 3 Barb. Ch., 71; 2 N. H., 481. It was held upon the former appeal that this is a case of the latter kind; that the cause of action accrued to *Mrs. Roys* by virtue of the transfer from Mr. Pinney; and that she took title, and could sue upon the chose in action transferred, in her capacity of executrix.

The suit being brought by *Mrs. Roys* as executrix, the first question is, was the defendant properly excluded from giving evidence as a witness in his own behalf?' This depends upon the construction to be given to section 51, chap. 137, R. S. The reading of the first clause of the section might, at first blush, seem to include every action in which an administrator or legal representative sues or defends in a representative capacity. An attentive consideration of the language of that clause, and of the object of the legislature as manifested by the whole section, convinces us that such was not the intention. The purpose, and the only purpose, of judicial investigation in regard to the construction of doubtful provisions of statute law, is to ascertain the intention of the legislature which enacted the statute; and when that is done, the intention is not to be defeated either by a too narrow or too liberal application of the words employed. Words susceptible of different applications are to be limited or extended so as to subserve the object which the legislature had in view. The object of the legislature is plain enough. It was to prohibit a living party from testifying in behalf of himself, when, by reason of death, the other party to the transaction, having had the same knowledge or means of knowledge, cannot be present in court to confront him or make his statement of the transaction. We are of opinion that the words "when the opposite party sues or defends as administrator or legal representative of any deceased person," are not inaptly chosen to express this object, and that they are to be applied to cases of a strictly representative character; that is to cases where the admistrator or other legal representative stands in

the place of a deceased person, and sues or defends upon a cause of action or matter of defense which accrued to the deceased in his lifetime, and upon which the deceased, if still living, might himself sue or defend. In cases like the present, where an executor or administrator sues upon a contract entered into by himself, or a chose in action purchased by him, he does not, in strictness, represent his testator or intestate. He sues upon his own contract, and may, if he chooses, at the trial or elsewhere in the course of the proceeding, entirely ignore his representative character, and recover as upon a demand due to him in his own right, as the authorities above cited fully show.

Again, we think the defendant ought to have been admitted for another reason. The plaintiff sued both as executrix and assignee. The cause of action accrued to her solely by virtue of the assignment. In such case, there being distinct provisions of the statute regulating each, and not in harmony with one another, we think the competency of the opposite party to be a witness must be tested by looking to the origin of the cause of action and of the plaintiff's right to sue. If the cause of action comes from an original assignor who is still living, and the plaintiff's right to sue by virtue of the assignment alone, then, for the purpose of this question, it is to be regarded as a suit by an assignee. Any other construction would lead to very harsh consequences, and which were never intended. The original assignor might, as happened in this case, be admitted to testify, when the opposite party to the transaction about which he testifies would be absolutely excluded. It needs no argument to show that this would be an entire departure from the intention of the legislature as evidenced by all its actions upon this subject.

This far we have discussed the question of the competency of the defendant to be sworn and examined as a witness, but the extent of such examination has not been considered. It follows that his right to be sworn and examined is the same as

it would have been if the action had been brought by Mr. Pinney as the survivor of the firm of Roys & Pinney. In such case he might have been examined as to the conversation between himself and Mr. Pinney, and to which Mr. Pinney testified. He might also have been examined as to any material transaction between himself and Mr. Pinney, either where Mr. Pinney was acting for himself individually or as a member of the firm of Roys & Pinney. He might perhaps have been examined even as to transactions between himself and Mr. Roys, where Mr. Pinney was actually present and had the same knowledge or means of knowledge as Mr. Roys. But as to anything which occurred between him and Mr. Roys, in the absence of Mr. Pinney, or of which Mr. Pinney had no personal knowledge, the defendant clearly could not have been examined. He would have been prohibited under the third clause of the section above referred to, which forbids the examination of a party to a civil action " in relation to any matter in controversy arising out of any transaction managed or conducted by an agent of the opposite party, * * unless such agent is still living." In partnership affairs each partner is, as to the business which he transacts for the firm of which he is a member, the agent of such firm. Mr. Roys, the deceased, was the agent of the firm of Roys & Pinney.

The other questions presented by the case were not considered by the court in consultation, and consequently not decided, except that we were all of opinion that a matter pleaded as a counter-claim may be sustained as a set-off, if established by proper evidence at the trial. The facts constituting the set-off being stated in the answer, the demand of the defendant for judgment as upon a counter-claim may be rejected, or the court may order an amendment.

I have, however, devoted considerable time to the examination of these questions, and will, before dismissing the case, state my views so far I have come to any definite conclusions. In the first place, I think there can be no pretense for saying

Lawrence vs. Vilas.

that the first and third numbered subdivisions of the answer, called "counter-claims," can be sustained as such at all. They both relate to transactions growing out of the unsettled affairs of the old firm of Vilas, Roys & Pinney. If they related to transactions between the defendant and the subsequent firm of Roys & Pinney, the case would be no better, considering them as counter-claims. In either case they are excluded by the express definition of the statute. " A counter-claim must be one existing in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action." R. S. ch. 125, sec. 11. It is clear that there can be no several judgment in favor of the defendant and against *Mrs. Roys* as executrix, upon a claim arising out of the unsettled affairs of the firm of Vilas, Roys & Pinney, nor upon a claim against the firm of Roys & Pinney.

As to the second numbered sub-division of the answer, called the " 2d counter-claim," I am not clear that it does not state a proper matter of counter-claim to this action. The material words are, that " said Roys and said Pinney *each agreed to pay* to this defendant one third part of any costs and expenses which might be incurred," &c. This is an averment of a several promise on the part of Mr. Roys to pay one third of the expenses of collecting the mortgage, and as such would seem to be the proper subject of a counter-claim within the statute. But my examination of the question whether this claim can be allowed as a set-off has led me to doubt its validity as a counter-claim, or whether the statute regulating counter-claims can be applied to an action brought by an executor or administrator for a debt which has accrued to him since the death of his testator or intestate. The courts of other states and of England have, as will presently be shown, invariably refused to allow the defendant to set-off a demand against the testator or intestate in such cases, on the ground that it would change the course of distribution. The effect of allowing a counter-claim would be the same, and in this respect the distinction

between a set-off and counter-claim, wherever one exists, would seem to be immaterial. The allowance of either would diminish the assets in the hands of the executor or administrator, and alter the course of distribution in proportion to the sum allowed. I am not, therefore, satisfied whether this claim against the deceased, Mr. Roys, can or cannot be allowed as a counterclaim to this action, and I leave it, so far as I am concerned, undecided.

As to the individual promise of Mr. Pinney to pay one third of the costs and expenses of collecting the mortgage, it is clear that cannot be the subject of a counter-claim. It is not a claim in favor of the defendant against the plaintiff. It is a claim against a third person, not a party to this action. If Mr. Pinney had brought suit, and it had been set up against him, it would have fallen under the head of counter-claims; but when set up against his assignee, it does not. *Vassear v. Livingston*, 13 N. Y., 248.

Upon the questions whether these several claims are available as matters of set-off, I am of opinion that those stated in the "1st and 3d counter-claims" are not. The rule as to set-off in a court of law is, that the cross demand must be liquidated, founded on judgment or contract, and one for which an action at law will lie. A claim recoverable only by action of account or bill in equity cannot be set off at law. *Sherman v. Ballou*, 8 Cow., 310; Barb. on Set-off, 32; R. S., ch. 126, sec. 1, subd. 1. It may perhaps be insisted that the abrogation of all distinction between legal and equitable remedies under the code has changed this rule; and that now unliquidated demands, or those which are recoverable only by suit in equity, are the proper subjects of set-off in a suit at law. However this may be, it still seems to me that these claims must share the fate of the individual claim against the deceased, Mr. Roys, as being claims existing against him at the time of his death, and which cannot be set off against a demand accruing to the executrix after his death. If I am right upon that point, as I am almost positive

I am, then these claims, as matters of set-off, must be excluded on that ground.

I have already observed, as to the individual claim against the testator, Mr. Roys, stated in the "2d counter-claim," that according to the rule prevailing in other states and in England, it cannot be allowed as a set-off in this action. Willes, 103, 264, and note (a); Buller's N. P., 180; 2 N. H., 419; 7 id., 16; 4 Johns. Ch., 11; 8 Wend., 530; 21 id., 674; 10 Paige, 319; 6 N. Y., 168; Hardin (Ky.), 252; 2 Bibb, 262; 2 Hill, 214. The reason of the rule has also been given, that the *pro rata* distribution would be broken in upon. The demand, when collected, is assets out of which the defendant is entitled to be paid only in due course of administration, the same as other creditors. If the set-off were allowed, he might in fact receive more than a *pro rata* dividend, and thus gain an undue preference over other creditors. The statutes under which these decisions were made are referred to and quoted in some of them, but I have not examined sufficiently to determine whether our statutes respecting set-offs before commissioners to adjust and allow claims against the estates of deceased persons, and in actions by executors or administrators for the recovery of debts or demands due the estate (sections 9 and 18, ch. 101, R. S.), have established a different rule or not. This point, as well as some others of which I have spoken, was not argued at the bar, and I am not prepared to pass upon it without argument.

Upon the point whether the several demand against Mr. Pinney may be set off, I have less doubt. The case in this particular is the same as if the action had been brought by Mr. Pinney as survivor. It is a general rule, both at law and in equity, that a debt owing by one of two or more partners cannot be set off against a partnership demand. *Howe v. Sheppard*, 2 Sumner, 409; *Ladue v. Hart*, 4 Wend., 583; 7 Cranch, 565; 2 Bay, 146. But the rule has some exceptions, one of which seems to be, that to a demand by a surviving partner who sues as such, the defendant may set off a debt due him from such

survivor individually; and, *vice versa*, a debt due to a defendant as surviving partner may be set off against a demand on him in his own right. *Slipper v. Stidstone*, 5 Term R., 593. See same case, 1 Esp., 47, and note. So it has also been held that a debt due from the plaintiff as surviving partner to the defendant, may be set off against a debt due from the defendant to the plaintiff in his own right. *French v. Andrade*, 6 Term R., 580. I conclude, therefore, that the several demand against Mr. Pinney, which belonged to the defendant at the time of the assignment to the plaintiff, may be set off in this action.

*By the Court.*—Judgment reversed, and a new trial awarded.